**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CHAPTER 11** |
| **STEPHEN H. BREWSTER, SR.,** | ) | |
| | ) | **CASE NO.  14-40039-PWB** |
| _____Debtor._____ | ) | |

**AMENDED PLAN OF REORGANIZATION**
**FILED BY STEPHEN H. BREWSTER, SR.**

**Dated this 25th day of April, 2014**

---

Filed by:

Stephen H. Brewster, Sr.
Debtor and Debtor in Possession


Attorneys for Debtor and Debtor in Possession:

Leslie M. Pineyro
Leon S. Jones
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300

COMES NOW, Stephen H. Brewster, Sr. debtor and debtor in possession in the above-captioned case (the "Debtor"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Amended Plan of Reorganization (the "Plan") for the resolution of the Claims against the Debtor.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

1.1    <u>Disclosure Statement</u>.  Contemporaneously with the filing of the Plan, Debtor filed and served a Disclosure Statement, as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains the Debtor's history, financial information regarding Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2    <u>Property and Claims</u>.  This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1    The following terms, when used in this Plan, shall have the following meaning:

2.1.1    "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2    "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 *or* 503 of the Bankruptcy Code.

2.1.3    "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4    "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5    "Assets" means, collectively, all of the property, as defined by sections 541 and 1115 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties

exist on the Effective Date or thereafter in accordance with sections 541 and 1115 of the Bankruptcy Code.

2.1.6 "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "Bankruptcy Case" means the chapter 11 case initiated by the Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9 "Bankruptcy Code" means title 11 of the United States Code.

2.1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12 "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia.

2.1.13 "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14 "Causes of Action" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "Chapter 11" means chapter 11 of the Bankruptcy Code.

2.1.16 "Claim" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "Class" means a category of Claims described in this Plan.

2.1.18 "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "Confirmation Order" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

2.1.21 "Debtor" shall mean Stephen H. Brewster, Sr. debtor in this Bankruptcy Case.

2.1.22 "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23 "Disclosure Statement" means the Disclosure Statement for Amended Plan of Reorganization filed by Debtor as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.24 "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25 "Distribution" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.26 "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.27 "Effective Date" means the date that is 60 days after entry of a Confirmation Order.

2.1.28 "Equipment" means the machinery, fixtures, equipment, and other supplies used by Debtor in the operation of business.

2.1.29 "Estate" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to sections 541 and 1115 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, Retained Actions, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise as provided by sections 541 and 1115 of the Bankruptcy Code.

2.1.30 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which Debtor is a party.

4

2.1.31  "Filing Date" means January 6, 2014.

2.1.32 "Final Distribution" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.33 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.34 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.35  "Holder" means a holder of a Claim or Interest, as applicable.

2.1.36  "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.37  "Interests" intentionally deleted.

2.1.38  "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.39 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.40 "Plan" means this plan of reorganization as the same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.41 "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.42 "Priority Tax Claim" means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.43 "Professional Compensation" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals.

2.1.44 "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan.  If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

2.1.45  "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.46  "Released Parties" means Debtor.

2.1.47  "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.48  "Schedules" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.49  "Secured Claim" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.50  "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51  "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52  "Unsecured Claim" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2     Time.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3     Events of Default.    Unless otherwise specifically provided as to a Holder, in the event Debtor or Reorganized Debtor, as applicable, (hereinafter "Debtor") defaults on payments to a Holder of a Class under the Plan or otherwise defaults under a Class of the Plan, the Holder of such claim in such Class must send written notice ("Delinquency Notice") to Debtor to the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has served such Holder a written notice of a change of address for Debtor. Such Delinquency Notice must be in writing and contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days from Debtor's and Debtor's counsel's receipt of the

Delinquency Notice (or the following business day if the 10th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Delinquency Notice to Debtor via certified mail with a copy via email and regular mail to Leon S. Jones at the address reflected in the then current directory of the State Bar of Georgia. Debtor shall have ten (10) days from receipt of the Deficiency Notice by Debtor and Debtor's counsel to cure such default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims (i.e. a default under Class 6 shall not constitute a default under Class 2).

## Article 3
## Classification of Claims and Interests; Impairment

      3.1    <u>Summary</u>. The categories of Claims set forth below classify all Claims against the Debtor for all purposes of this Plan. A Claim shall be deemed classified in a particular Class only to the extent the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. The treatment with respect to each Class of Claims provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims.

      3.2.1   Class 1 shall consist of the Priority or Secured Tax Claim of the Internal Revenue Service

      3.2.2   Class 2 shall consist of the Priority or Secured Tax Claim of the Georgia Department of Revenue.

      3.2.3   Class 3 shall consist of the Priority or Secured Tax Claims of the Floyd County Tax Commissioner.

      3.2.4   Class 4 shall consist of the Secured Claim of Crimson Portfolio ALPHA, LLC.

      3.2.5   Class 5 shall consist of the Secured Claims of Crimson Portfolio, LLC.

      3.2.6   Class 6 shall consist of the Secured Claim of Ally Financial related to Debtor's Equinox.

      3.2.7   Class 7 shall consist of the Secured Claim of Ally Financial related to Debtor's Sierra.

      3.2.8   Class 8 shall consist of the Secured Claim of World Omni Financial Corp.

      3.2.9   Class 9 shall consist of the Claims Secured by Non-Debtor Property.

      3.2.10  Class 10 shall consist of General Unsecured Claims.

      3.2.11  Class 11 shall consist of the Priority or Secured Tax Claim of Governmental Units Not Otherwise Classified.

3.2.12  Class 12 shall consist of Debtor's Interest and New Value.

**Article 4**
**Treatment of Claims and Interests**

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan with the accrued and unpaid interest, if any) without prepayment penalty.

4.1    **Class 1**:        Internal Revenue Service Tax Claims:

The amount of any Internal Revenue Service ("IRS") Priority or Secured Tax Claim ("Class 1 IRS Tax Claim") that is not otherwise assessed, assessable or due and payable on or prior to the Effective Date, and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.  Debtor reserves the right to pay any tax claim in full at any time.

<u>Priority Tax Claim of the Internal Revenue Service</u>: Class 1 consists of the priority tax claim of the Internal Revenue Service.  Debtor listed the IRS for notice only, and does not believe the IRS holds a claim against Debtor.  On January 24, 2014, the IRS filed proof of claim number 4 asserting a priority tax claim in the amount of $54.75.  Debtor does not believe the IRS holds a claim, and in the even the IRS does not withdraw its proof of claim, Debtor tinted to object to same.  In the event the IRS holds an Allowed Priority or Secured Tax Claim, Debtor shall pay the IRS Class 1 priority tax claim in full by the 60th month following the Filing Date with interest accruing at the annual rate of 4% or such lesser rate agreed to by the IRS.

Any general unsecured tax clam for taxes, penalties or otherwise will be treated in accordance with Class 10.

A failure by the Debtor to make a payment under Class 1 to the IRS pursuant to the terms of the Plan shall be an event of default.  In the event of a default under Class 1, IRS must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has served such Holder a written notice of a change of address for Debtor. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has 12 days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 12th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  IRS must send such Default Notice via certified mail with a courtesy copy via email and regular mail to Leon S. Jones at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have 12 days from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt

by Debtor's Attorney is for courtesy only and shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures, the governmental unit may (a) enforce the entire amount of its Class 1 Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of an Allowed Class 1 IRS Tax Claim is impaired and entitled to vote to accept or reject the Plan.  Nothing contained herein shall prohibit the Debtor from objecting to the Class 1 Claims for any reason.

4.2    **Class 2**:    Georgia Department of Revenue Tax Claims:

The amount of any Georgia Department of Revenue ("Ga. Dept of Rev.") Priority or Secured Tax Claim ("Class 2 Ga. Dept of Rev. Tax Claim") that is not otherwise assessed, assessable or due and payable on or prior to the Effective Date, and the right of the Ga. Dept of Rev., if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Ga. Dept of Rev. would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.  Debtor reserves the right to pay any tax claim in full at any time.

Priority Tax Claim of the Georgia Department of Revenue: Class 2 consists of the priority tax claim of the Georgia Department of Revenue.  Debtor listed the Ga. Dept of Rev. for notice only, and does not believe the Ga. Dept of Rev. holds a claim against Debtor.  In the event the Ga. Dept of Rev. does not file a claim before the Bar Date, the claim of the Ga. Dept of Rev. shall be fixed at $0.00.  In the event the Ga. Dept of Rev. holds an Allowed Priority or Secured Tax Claim, Debtor shall pay the Ga. Dept of Rev. Class 2 priority tax claim in full by the 60th month following the Filing Date with interest accruing at the annual rate of 12% or such lesser rate agreed to by the Ga. Dept of Rev.

Any general unsecured tax clam for taxes, penalties or otherwise will be treated in accordance with Class 10

A failure by the Debtor to make a payment under Class 2 to the Ga. Dept of Rev. pursuant to the terms of the Plan shall be an event of default.  In the event of a default under Class 2, Ga. Dept of Rev. must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has served such Holder a written notice of a change of address for Debtor. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has 12 days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 12th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  Ga. Dept of Rev. must send such Default Notice via certified mail with a courtesy copy via email and regular mail to Leon S. Jones at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have 12 days from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by Debtor's Attorney is for courtesy only and shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default

following proper Default Notice procedures, the governmental unit may (a) enforce the entire amount of its Class 2 Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of an Allowed Class 2 Ga. Dept of Rev. Tax Claim is impaired and entitled to vote to accept or reject the Plan.  Nothing contained herein shall prohibit the Debtor from objecting to the Class 2 Claims for any reason.

4.3    **Class 3**:        Floyd County Tax Commissioner

The amount of any Floyd County Tax Claim that is not otherwise assessed, assessable or due and payable on or prior to the Effective Date, and the right of the Floyd County Tax Commissioner, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Floyd County Tax Commissioner would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.  Debtor reserves the right to pay any tax claim in full at any time.

4.3 A:  **Class 3A**:    Old Lindale Floyd Count Tax Claim: Class 3A consists of the priority or secured tax claim of the Floyd County Tax Commissioner for ad valorem taxes associated with Debtor's real property located at 401 Old Lindale Road, Rome, GA ("Class 3A Floyd County Tax Claim").  The Floyd County Tax Commissioner was listed in Debtor's schedules as holding a claim for $13,000 for 2013 taxes on Debtor's Old Lindale Property.  In the event Floyd County does not file a Class 3A tax clam by the Bar Date, the Class 3A Floyd County Tax Claim shall be fixed at $13,000.00.  Debtor shall pay the Class 3A Floyd County Tax Claim in 54 equal monthly payments of $312.64 with interest accruing at the annual rate of 12%.  Notwithstanding anything to the contrary herein, the Class 3A Floyd County Tax Claim shall be paid in full within 60 months of the Filing Date.  Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 3A received by the Floyd County Tax Commissioner shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3A.  Any general unsecured tax clam for taxes, penalties or otherwise will be treated in accordance with Class 10.

4.3B:  **Class 3B**:        Additional Lindale Acreage Floyd Count Tax Claim: Class 3B consists of the priority or secured tax claim of the Floyd County Tax Commissioner for ad valorem taxes associated with Debtor's undeveloped real property located on Old Lindale Road, Rome, GA and consisting of approximately 4 acres ("Class 3B Floyd County Tax Claim").   The Floyd County Tax Commissioner was listed in Debtor's schedules as holding a claim for $1,000 for 2013 taxes on Debtor's Undeveloped 4 Acres on Old Lindale Road.  In the event Floyd County does not file a Class 3B tax clam by the Bar Date, the Class 3B Floyd County Tax Claim shall be fixed at $1,000.00. Debtor shall pay the Class 3B Floyd County Tax Claim in 54 equal monthly payments of $24.06 with interest accruing at the annual rate of 12%.  Notwithstanding anything to the contrary herein, the Class 3B Floyd County Tax Claim shall be paid in full within 60 months of the Filing Date.  Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 3B received by the Floyd County Tax

Commissioner shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3B.  Any general unsecured tax clam for taxes, penalties or otherwise will be treated in accordance with Class 10.

       4.3C:  **Class 3C**:  <u>Huffaker Property Floyd Count Tax Claim</u>:  Class       3C consists of the priority or secured tax claim of the Floyd County Tax Commissioner for ad valorem taxes associated with Debtor's real property located at 117 Huffaker Road ("Class 3C Floyd County Tax Claim").  The Floyd County Tax Commissioner was listed in Debtor's schedules as holding a claim for $13,000 for 2013 taxes on Debtor's Huffaker Property.  In the event Floyd County does not file a Class 3C tax clam by the Bar Date, the Class 3C Floyd County Tax Claim shall be fixed at $13,000.00.  Debtor shall pay the Class 3C Floyd County Tax Claim in 54 equal monthly payments of $312.64 with interest accruing at the annual rate of 12%.  Notwithstanding anything to the contrary herein, the Class 3C Floyd County Tax Claim shall be paid in full within 60 months of the Filing Date.  Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 3C received by the Floyd County Tax Commissioner shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3C.  Any general unsecured tax clam for taxes, penalties or otherwise will be treated in accordance with Class 10.

       4.3D:  **Class 3D**:  <u>Residence Floyd Count Tax Claim</u>:  Class 3D consists of the priority or secured tax claim of the Floyd County Tax Commissioner for ad valorem taxes associated with Debtor's real property consisting of his Residence located at 14 Belle Meade Drive, Rome GA ("Class 3D Floyd County Tax Claim").  The Floyd County Tax Commissioner was listed in Debtor's schedules as holding a claim for $0.00 for 2013 taxes on Debtor's Residence.  In the event Floyd County does not file a Class 3D tax clam by the Bar Date, the Class 3D Floyd County Tax Claim shall be fixed at $0.00.  In the event Floyd County holds an Allowed Class 3D Floyd County Tax Claim, the Class 3D Floyd County Tax Claim shall be paid in full within 60 months of the Filing Date with interest accruing at the annual rate of 12%.  Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 3D received by the Floyd County Tax Commissioner shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3D.  Any general unsecured tax clam for taxes, penalties or otherwise will be treated in accordance with Class 10.

       A failure by the Debtor to make a payment under a sub-class in Class 3 to Floyd County pursuant to the terms of the Plan shall be an event of default under the applicable sub-class.  In the event of a default under a sub-class in Class 3, Floyd County must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has served such Holder a written notice of a change of address for Debtor. Such Default Notice must specify which sub-class is in default, contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has 12 days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 12th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  Floyd County must send such Default Notice via certified mail with a courtesy copy via email and regular mail to Leon S. Jones at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have 12 days from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.

Receipt by Debtor's Attorney is for courtesy only and shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures, the governmental unit may (a) enforce the entire amount of its Class 3 Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court. A default under one sub-class of Class 3 shall not constitute a default under any other class or sub-class of the Plan.

The Holder of the Class 3 Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtor from objecting to the Class 3 Claims for any reason.

4.4    **Class 4**:      Secured Claim of Crimson Portfolio ALPHA, LLC:

Class 4 consists of the Secured Claim of Crimson Portfolio ALPHA, LLC ("Crimson ALPHA"), as assignee of Crimson Portfolio, as assignee of Synovus Bank, as successor in interest via name change and merger with Citizens First Bank. Debtor scheduled Crimson Alpha as holding a secured claim in the disputed amount of $626,000 secured by a first priority lien in Debtor's Residence located at 14 Belle Meade Drive, Rome GA and serviced by Carrington Mortgage Services. The Allowed secured amount of Crimson Alpha's Class 4 Claim shall be referred to herein as the "Class 4 Secured Claim." Crimson ALPHA's Class 4 Secured Claim is evidenced by that (i) Security Deed between Debtor and Bonnie Brewster as borrower and Citizens First Bank as lender recorded in the land records of Floyd County, Georgia on May 2, 2005 in deed book 1937 page 0894 *et seq.* (ii) Assignment of Security Instruments between Synovus Bank, formerly known as Columbus Bank and Trust Company, as successor in interest through name change and by merger with Citizens First Bank, as assignor, and Crimson Portfolio, LLC as assignee recorded in said land records at deed book 2350 page 67 *et seq.*; and (iii) Assignment of Security Deed between Crimson Portfolio, LLC, as assignor, and Crimson Portfolio ALPHA, LLC, as assignee, and recorded on August 13, 2013 in said land records in deed book 2366 page 940 *et seq.* Debtor shows that certain pre-petition payments made by Debtor to Crimson ALPHA were applied to commercial loans held by Crimson Portfolio, an affiliate of Crimson ALPHA, rather than Debtor's residential mortgage held by Crimson ALPHA. Accordingly, Debtor shows that any such payments erroneously applied should be correctly applied to the Crimson ALPHA mortgage on Debtor's residence. Upon Debtor's information and belief, Crimson ALPHA asserts a pre-petition arrearage of $30,865.82; however, Debtor shows that the actual arrearage on the Class 4 Claim is $18,375.81 (the "Class 4 Arrearage"). Debtor shall cure the Class 4 Arrearage in 18 equal monthly payments of $1,019.55 each. Debtor commenced his regular post-petition monthly mortgage payments to Crimson ALPHA on February 1, 2014. Debtor shall continue to pay his regular monthly mortgage payments of $3,170.83 per month to Crimson ALPHA in accordance with the non-default terms of the pre-petition loan documents, and such pre-petition loan documents shall continue in full force and effect provided that this bankruptcy and Debtor's financial condition shall not constitute a default under same.

Notwithstanding anything in the Plan or otherwise to the contrary, Debtor shall be entitled to sell or refinance his Residence free and clear of the Holder of the Class 4 Secured Claim's lien provided that such Holder receives the amount of the then outstanding Class 4 Secured Claim and in such event, such Holder shall release its lien on the Residence upon receipt of the then outstanding Class 4 Secured Claim. To the extent the Holder of the Class 4 Secured Claim receives payments on the Class 4 claim subsequent to the Petition Date and

prior to the Effective Date, such payments shall be applied in reduction of the Class 4 Secured Claim in accordance with the non-default terms of the pre-petition loan documents. Debtor shall continue to maintain insurance on the Residence in accordance with the pre-petition loan documents between the parties and shall timely pay all ad valorem taxes assessed or assessable against the Residence subsequent to the Effective Date.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

4.5   **Class 5**:       Secured Claims of Crimson Portfolio:

Class 5 consists of the Secured Claims of Crimson Portfolio, LLC ("Crimson Portfolio"). Debtor scheduled Crimson Portfolio as holding two secured claims: (1) a secured claim in the disputed amount of $1,706,848.00 secured by Debtor's Huffaker Property; and (ii) a secured claim in the disputed amount of $2,100,000.00 secured by Debtor's Old Lindale Property. Upon Debtor's information and belief, Crimson Portfolio asserts the outstanding balance of the indebtedness secured by: (i) Debtor's Huffaker Property is $1,925,933.77 pursuant to proof of claim number 9 consisting of principal of $1,396,962.78, interest of $263,246.30, attorney's fees of $166,045.90, late charges of $74,476.90 and "other fees" of $25,201.89; and (ii) Debtor's Old Lindale Property is $2,328,002.87 pursuant to proof of claim number 10 consisting of principal of $1,746,070.57, interest of $340,677.75, attorney's fees of $208,699.83, late charges of $5,381.87 and "other fees" of $27,172.85 for a total asserted claim of $4,253,936.64 ("Total Asserted Class 5 Claim"). Such amount as ultimately Allowed by the Court as an appropriate secured claim shall be referred to herein collectively as the "Total Allowed Class 5 Claim[1]."

**Huffaker Property Crimson Secured Claim**:       Debtor owns certain real property located on Huffaker Road (the "Huffaker Property") subject to a security deed held by Crimson Portfolio[2]. The Huffaker Property, rents generated therefrom, fixtures and other collateral as described by and perfected by the aforementioned Huffaker pre-petition loan documents, shall be referred to herein as the "Huffaker Class 5A Collateral."

---

[1] Debtor reserves the right to object to the Class 5 Claim in all respects, including such amount as is proper under an 1111(b) election.

[2] Crimson Portfolio's lien against Debtor's Huffaker Property is evidenced by that: (i) Commercial Deed to Secure Debt and Security Agreement between Debtor as grantor and Citizens First Bank as grantee recorded in the land records of Floyd County, Georgia on December 13, 2006 in deed book 2052 page 806 *et seq* (as modified the "Huffaker Deed"); (ii) Modification of Deed to Secure Debt between such parties recorded in said land record on December 1, 2009 in deed book 2210 page 816 *et seq*.; (iii) Modification of Deed to Secure Debt between Debtor and Synovus Bank, formerly known as Columbus Bank and Trust Company, as successor in interest through name change and by merger with Citizens First Bank recorded in said land record on February 3, 2011 in deed book 2255 page 1121 *et seq*. and rerecorded on March 23, 2011 at deed book 2260 page 407 *et seq*.; (iv) Modification Agreement of Deed to Secure Debt between such parties recorded in said land records on September 8, 2011 in deed book 2275 page 498 *et seq*.; (v) Modification Agreement of Deed to Secure Debt between Synovus Bank, formerly known as Columbus Bank and Trust Company, as successor in interest through name change and by merger with Citizens First Bank and Debtor recorded on April 1, 2013 in said land records at deed book 2275 page 498 *et seq*.; (vi) Assignment of Security Instruments from Synovus Bank, as assignor, and Crimson Portfolio, LLC as assignee recorded on April 1, 2013 in said land records at deed book 2348 page 919 *et seq*

Pursuant to a "dragnet" provision in the Huffaker Deed, the Huffaker Deed secures the Total Allowed Class 5 Claim.  Based on Debtor's knowledge of the Rome, Georgia real estate market and self-storage facilities, Debtor values, for purposes of the Plan, the Huffaker Class 5A Collateral at $1,000,000.00 (such amount or such other amount as allowed by the Court with interest accruing pursuant to this Class 5A shall be referred to herein as the "Secured Class 5A Claim").  Based on a review of appraisal reports commissioned by Crimson Portfolio in August 23, 2013, Crimson Portfolio values the Huffaker Class 5A Collateral at $1,300,000.00[3].  The Court will determine the value of the Huffaker Class 5A Collateral at or by the Confirmation Hearing.

**Old Lindale Property Crimson Secured Claim**:  Debtor owns certain real property located on Old Lindale Road (the "Old Lindale Property") subject to a security deed held by Crimson Portfolio[4].  The Old Lindale Property, rents generated therefrom, fixtures and other collateral as described by and perfected by the aforementioned Old Lindale pre-petition loan documents, shall be referred to herein as the "Old Lindale Class 5B Collateral."

Pursuant to a "dragnet" provision in the Old Lindale Deed, the Old Lindale Deed secures the Total Allowed Class 5 Claim.  Based on Debtor's knowledge of the Rome, Georgia real estate market and self-storage facilities, Debtor values, for purposes of the Plan, the Old Lindale Class 5B Collateral at $1,100,000.00[5] (such amount or such other amount as allowed by the Court with interest accruing pursuant to this Class 5B shall be referred to herein as the "Secured Class 5B Claim").  Based on a review of appraisal reports commissioned by Crimson Portfolio in August 23, 2013, Crimson Portfolio values the Old Lindale Class 5B Collateral at $1,410,000.00. .

---

[3] Debtor reserves the right to assert a different value for the Huffaker Class 5A Collateral.  Accordingly Debtor's assertion of value in the Disclosure Statement, Plan, schedules or otherwise shall not be deemed an admission or otherwise be binding on Debtor.

[4] Crimson Portfolio's lien against Debtor's Old Lindale Property is evidenced by that: (i) Commercial Deed to Secure Debt and Security Agreement between Debtor as grantor and Citizens First Bank as grantee recorded in the land records of Floyd County, Georgia on May 5, 2006 in deed book 200 page 1095 *et seq.*; (as modified the "Old Lindale Deed") (ii) Assignment of Lease and Rents between such parties recorded in said land record on May 5, 2006 in deed book 2008 page 1105 *et seq.*; (iii) Deed to Secure Debt between such parties recorded in said land record on December 3, 2007 in deed book 2117 page 432 *et seq.*; (iv) Modification to Note and Deed to Secure Debt between Debtor and Citizens First Bank recorded in said land record on January 12, 2009 in deed book 2170 page 393 *et seq.*; (v) Modification of Deed to Secure Debt between such parties recorded in said land records on December 1, 2009 in deed book 2275 page 498 *et seq.*; (vi) Assignment of Security Instruments between Synovus Bank, formerly known as Columbus Bank and Trust Company, as successor in interest through name change and by merger with Citizens First Bank, as assignor, and Crimson Portfolio, LLC as assignee recorded on April 1, 2013 in said land records at deed book 2348 page 919 *et seq.*

[5] Debtor reserves the right to assert a different value for the Old Lindale Class 5B Collateral. Accordingly Debtor's assertion of value in the Disclosure Statement, Plan, schedules or otherwise shall not be deemed an admission or otherwise be binding on Debtor.

OPTION I:

In the event Crimson Portfolio **does not** elect treatment under 11 U.S.C. §1111(b) at or by the Confirmation Hearing, Option 1 shall apply and Debtor shall pay the Secured Class 5 Claims as follows:

4.5 A:  **Class 5A**:      **Huffaker Property Crimson Secured Claim**:

Debtor shall satisfy the Secured Class 5A Claim pursuant to the following terms.

Class 5A consists of the Secured Class 5A Claim as defined in the above paragraphs of Class 5. Commencing on the Effective Date and continuing by the 25th day of each subsequent month for a total of 120 months, Debtor shall pay the Secured Class 5A Claim (i.e. $1,000,000.00 or such other amount as determined by the Court) in equal monthly payments of $7,792.00 with interest accruing at the annual rate of 5.25% from the Effective Date on the Secured Class 5A Claim with a final payment for all outstanding principal and interest on the 25th day of the 120th month following the Effective Date ("Secured Class 5A Maturity Date"). Any payments received on or after the Effective Date shall be applied first to accrued but unpaid post Effective Date interest accruing on the Secured Class 5A Claim pursuant to Class 5A and then to the principal balance of the Secured Class 5A Claim.

The Secured Class 5A Claim shall continue to be secured by the Huffaker Class 5A Collateral to the same validity and priority which existed on the Effective Date to the extent of the Secured Class 5A Claim (i.e. $1,000,000.00 or such other amount as determined by the Court). Upon receipt of the then outstanding balance of the Secured Class 5A Claim, Crimson Portfolio shall release its lien upon the Huffaker Class 5A Collateral, and take such action as reasonably necessary to evidence such release including, but not limited to, filing a cancellation or release of the Huffaker Deed and any attendant UCC financing statement. On or prior to the Secured Class 5A Maturity Date, Debtor shall be authorized to sell the Huffaker Class 5A Collateral or refinance the Secured Class 5A Claim, and, in such event, Crimson Portfolio shall release its lien against the Huffaker Class 5A Collateral in exchange for the then outstanding balance of the Secured Class 5A Claim. Upon request by Debtor, Crimson Portfolio shall provide the then outstanding balance of the Secured Class 5A Claim and confirm that Crimson Portfolio shall release its lien upon the Huffaker Class 5A Collateral in exchange for the same.

Crimson Portfolio shall hold a Class 10 Unsecured Claim for the balance of its Total Allowed Class 5 Claim less the amount of the Secured Class 5A Claim and the Secured Class 5B Claim. Such Class 10 Unsecured Claim is estimated in the amount of $1,779,190.91.

Debtor shall maintain reasonably adequate insurance on the Huffaker Class 5A Collateral through the Secured Class 5A Maturity Date. Any payments received by Crimson Portfolio on or after the Filing Date and before the Effective Date shall be applied to the principal balance of the Secured Class 5A Claim. In the event Debtor defaults on it payments or otherwise under Class 5A of the Plan, Crimson Portfolio must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has served the Class 5A Claim Holder a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days from receipt by Debtor and Debtor's counsel of the

Default Notice (or the following business day if the 10th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). Crimson Portfolio must send such Default Notice via certified mail to Debtor with a copy via email and regular mail to Leon S. Jones at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have ten (10) days from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor. Upon default by Debtor and only after submission of the required Default Notice in the aforementioned manner, Crimson Portfolio shall be authorized to (a) accelerate the Secured Class 5A Claim and exercise its state law rights and remedies against the Huffaker Property pursuant to the Huffaker Deed, related loan documents and applicable non-bankruptcy law without the necessity of Bankruptcy Court approval, and (b) Crimson Portfolio's recovery of the Huffaker Property shall be in full satisfaction of the Secured Class 5A Claim.

The Claim of the Class 5A Creditor is Impaired by the Plan and the holder of the Class 5A Claim is entitled to vote.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

4.5B:    **Class 5B**:    **Old Lindale Property Crimson Secured Claim**

Debtor shall satisfy the Secured Class 5B Claim pursuant to the following terms.

Class 5B consists of the Secured Class 5B Claim as defined in the above paragraphs of Class 5. Commencing on the Effective Date and continuing by the 25th day of each subsequent month for a total of 120 months, Debtor shall pay the Secured Class 5B Claim (i.e. $1,100,000.00 or such other amount as determined by the Court) in equal monthly payments of $8,450.00 with interest accruing at the annual rate of 5.25% from the Effective Date on the Secured Class 5B Claim with a final payment for all outstanding principal and interest on the 25th day of the 120th month following the Effective Date ("Secured Class 5B Maturity Date"). Any payments received on or after the Effective Date shall be applied first to accrued but unpaid post Effective Date interest accruing on the Secured Class 5B Claim pursuant to Class 5B and then to the principal balance of the Secured Class 5B Claim.

The Secured Class 5B Claim shall continue to be secured by the Old Lindale Class 5B Collateral to the same validity and priority which existed on the Effective Date to the extent of the Secured Class 5B Claim (i.e. $1,000,000.00 or such other amount as determined by the Court). Upon receipt of the then outstanding balance of the Secured Class 5B Claim, Crimson Portfolio shall release its lien upon the Old Lindale Class 5B Collateral, and take such action as reasonably necessary to evidence such release including, but not limited to, filing a cancellation or release of the Crimson Portfolio Old Lindale Security Deed and any attendant UCC financing statement. On or prior to the Secured Class 5B Maturity Date, Debtor shall be authorized to sell the Old Lindale Class 5B Collateral or refinance the Secured Class 5B Claim, and, in such event, Crimson Portfolio shall release its lien against the Old Lindale Class 5B Collateral in exchange for the then outstanding balance of the Secured Class 5B Claim. Upon request by Debtor, Crimson Portfolio shall provide the then outstanding balance of the Secured Class 5B Claim and confirm that Crimson Portfolio shall release its lien upon the Old Lindale Class 5B Collateral in exchange for the same.

Crimson Portfolio shall hold a Class 10 Unsecured Claim for the balance of its Total Allowed Class 5 Claim less the amount of the Secured Class 5A Claim and the Secured Class 5B Claim. Such Class 10 Unsecured Claim is estimated in the amount of $1,779,190.91.

Debtor shall maintain reasonably adequate insurance on the Old Lindale Class 5B Collateral through the Secured Class 5B Maturity Date  Any payments received by Crimson Portfolio on or after the Filing Date and before the Effective Date shall be applied to the principal balance of the Secured Class 5B Claim. In the event Debtor defaults on it payments or otherwise under Class 5B of the Plan, Crimson Portfolio must send written notice ("Default Notice") to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has served the Class 5B Claim Holder a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 10th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  Crimson Portfolio must send such Default Notice to Debtor via certified mail with a copy via email and regular mail to Leon S. Jones at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have ten (10) days from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor.  Upon default by Debtor and only after submission of the required Default Notice in the aforementioned manner, Crimson Portfolio shall be authorized to (a) accelerate the Secured Class 5 B Claim and exercise its state law rights and remedies against the Old Lindale Property pursuant to the Old Lindale Deed, related loan documents and applicable non-bankruptcy law without the necessity of Bankruptcy Court approval, and (b) Crimson Portfolio's recovery of the Old Lindale Property shall be in full satisfaction of the Secured Class 5B Claim.

The Claim of the Class 5B Creditor is Impaired by the Plan and the holder of the Class 5B Claim is entitled to vote.

OPTION II:

In the event Crimson Portfolio **does** elect treatment under 11 U.S.C. §1111(b) at or by the Confirmation Hearing, Option II shall apply and Debtor shall pay the Secured Class 5 Claim as follows:

4.5A: **Class 5A**: <u>**Huffaker Property Crimson Secured Claim**</u>:

If Crimson Portfolio elects treatment under 11 U.S.C. 1111(b), Debtor's total stream of payments to Crimson Portfolio on the Secured Class 5A Claim must equal the present value of the Huffaker Class 5A Collateral ($1,000,000.00 or such other amount as determined plus interest), but the sum of Debtor's Class 5A and Class 5B payments to Crimson Portfolio also must be in an amount equal to at least Crimson Portfolio's Total Allowed Class 5 Claim (asserted by Crimson Portfolio at $4,253,936.64) (hereinafter referred to as the "1111(b)

Total[6]").  *See Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C. (In re Brice Rd. Devs., L.L.C.)*, 392 B.R. 274, 285 (B.A.P. 6th Cir. 2008).

The Court shall determine the value of the Huffaker Property (the "Huffaker Value") Commencing on the Effective Date and continuing by the 25th day of each subsequent month Debtor shall pay the Secured Class 5A Claim (as defined above) in equal monthly payments of $7,792.00.  Such payments shall commence on the Effective Date and continue until the 1111(b) Total is reached (inclusive of payments made on the Secured Class 5A Claim and the Secured Class 5B Claim).  Interest shall accrue on the Class 5A Secured Claim at the rate of 5.25% per annum until the principal balance of the Secured Class 5A Claim (i.e. $1,000,000.00 or such other amount as determined by the Court) is paid in full and satisfied.  Upon satisfaction of the Secured Class 5A Claim, Debtor shall continue to pay such $7,792.00 per month until such time as Debtor has paid the 1111(b) Total, and continuing payments shall be credited toward satisfaction of any remaining balance due on the Secured Class 5B Claim and the 1111(b) Total.

**Example**: If the Court values the Huffaker Property at $1,000,000.00, the monthly payment on the Class 5A Claim of $7,792.00 will result in payment in full of the principal balance of the Secured Class 5A Claim (i.e. $1,000,000.00) with interest in 189 months representing total Class 5A payments (if no pre-payment occurs) of $1,472,688.00 inclusive of principal and interest.  Assuming Debtor has additionally made 189 monthly Class 5B payments of $8,450.00 each for a then total of payments under Class 5B of $1,597,050.00, the total payments on the 1111(b) Total will have been $3,069,738.00 at 189 months (i.e. $1,472,688.00 plus $1,597,050.00).  Debtor shall continue to make monthly payments under Class 5A until the 1111(b) Total reaches the Total Allowed Class 5 Claim (which Crimson Portfolio asserts is $4,253,936.64 inclusive of payments under Class 5B.

**Example:**  If the Court values the Huffaker Property at $1,300,000.00, the monthly payment on the Class 5A Claim of $7,792.00 will result in payment in full of the principal balance of the Secured Class 5A Claim (i.e. $1,300,000.00) with interest in 300 months representing total Class 5A payments (if no pre-payment occurs) of $2,337,600.00 inclusive of principal and interest.  Assuming Debtor has additionally made 300 monthly Class 5B payments of $8,450.00 each for a then total of payments under Class 5B of $2,535,000.00, the total payments on the 1111(b) Total will have been $4,872,600.00 at 300 months (i.e. $2,337,600.00 plus $2,535,000.00).  The 1111(b) Total will have been satisfied and Debtor will not make any additional Class 5A payments.

The Total Class 5 Claim shall continue to be secured by the Crimson Portfolio Collateral to the same extent (i.e. $4,253,936.64 or such other amount as the Court determines is the Total Allowed Class 5 Claim), validity and priority as existed on the Filing Date.  Notwithstanding anything to the contrary herein, in the event Crimson Portfolio elects 1111(b), upon receipt of: (i) the Allowed Secured Class 5A Claim (principal and interest); and (ii) total payments of at least $4,253,936.64 (or such other amount as the Court determines is the Total Allowed Class 5 Claim, inclusive of the principal and interest payments on the Secured Class 5A Claim and Secured Class 5B Claim), Crimson Portfolio shall release its lien upon the Huffaker Class 5A Collateral and, in such event, take such action as reasonably necessary to evidence such release including, but not limited to, filing a cancellation of the Security Deeds and any attendant

---

[6] Debtor reserves the right to dispute the amount of the 1111(b) Total claim.

UCC financing statement.  Debtor shall be authorized to sell the Huffaker Class 5A Collateral or refinance the Secured Class 5A Claims, and Crimson Portfolio shall release its lien against Huffaker Class 5A Collateral in exchange for the greater of: (i) the then outstanding principal balance due on the Secured Class 5A Claim; and (ii) the then outstanding balance of the Total Allowed Class 5 Claim after deducting all principal, interest and other payments received by Crimson Portfolio since the Filing Date).

**Example**:  For purposes of illustration only, in the event the Huffaker Property is valued at $1,000,000.00 and Debtor wishes to sell Huffaker Class 5A Collateral or refinance the Secured Class 5A Claim at the end of the 189th month following the Effective Date, and assuming Debtor has paid (A) $1,000,000 in principal payments and $472,688.00 in interest payments on the Secured Class 5A Claim since the Filing Date; and (B) $1,065,927.60 in principal payments and $531,122.40 in interest payment on the Secured Class 5B Claim, for total Class 5 Payment of $3,069,738.00, for the release of its lien, Crimson Portfolio would have to receive the greater of the (i) remaining principal balance of the Secured Class 5A Claim  of $0.00 (i.e. $1,000,000.00 less $1,000,000.00), or (ii) the remaining total outstanding balance of the 1111(b) Total which equals $1,184,198.64 (i.e. $4,253,936.64 less $3,069,738.00).  Accordingly, under such scenario, Debtor would have to pay $1,184,198.64 for the release of Crimson Portfolio's lien upon the Huffaker Class 5A Collateral.  Upon such payment, the 1111(b) Total would be satisfied under Class 5A and Class 5B as payments under both Class 5A and Class 5B count towards the 1111(b) Total, and any payment in excess of the Secured Class 5A Claim would be credited as additional principal payments on the Secured Class 5B Claim to the extent of any outstanding principal balance.

4.5B: **Class 5B**: <u>**Old Lindale Property Crimson Secured Claim**</u>:

If Crimson Portfolio elects treatment under 11 U.S.C. 1111(b), Debtor's total stream of payments to Crimson Portfolio on the Secured Class 5B Claim must equal the present value of the Old Lindale Class 5B Collateral ($1,100,000.00 or such other amount as determined plus interest), but the sum of Debtor's Class 5A and 5B payments to Crimson Portfolio also must be in an amount equal to at least Crimson Portfolio's Total Allowed Class 5 Claim (asserted by Crimson Portfolio at $4,253,936.64) (hereinafter referred to as the "1111(b) Total[7]").  *See Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C. (In re Brice Rd. Devs., L.L.C.)*, 392 B.R. 274, 285 (B.A.P. 6th Cir. 2008).

The Court shall determine the value of the Old Lindale Property (the "Old Lindale Value").  Commencing on the Effective Date and continuing on the 25th day of each subsequent month Debtor shall pay the Secured Class 5B Claim (as defined above) in equal monthly payments of $8,450.00.  Such payments shall commence on the Effective Date and continue until the 1111(b) Total is reached (inclusive of payments made on the Secured Class 5A Claim and Secured Class 5B Claim).  Interest shall accrue on the Class 5B Secured Claim at the rate of 5.25% per annum until the principal balance of the Secured Class 5B Claim (i.e. $1,100,000.00 or such other amount as determined by the Court) is paid in full and satisfied.  Upon satisfaction of the Secured Class 5B Claim, Debtor shall continue to pay such $8,450.00 per month until such time as Debtor has paid the 1111(b) Total, and continuing payments shall

---

[7] Debtor reserves the right to dispute the 1111(b) Total claim.

be credited toward satisfaction of any remaining balance due on the Secured Class 5A Claim and the 1111(b) Total.

**Example**: If the Court values the Old Lindale Property at $1,100,000.00, the monthly payment on the Class 5B Claim of $8,450.00 will result in payment in full of the principal balance of the Secured Class 5B Claim (i.e. $1,100,000.00) with interest in 194 months representing total Class 5B payments (if no pre-payment occurs) of $1,639,300.00 inclusive of principal and interest. Assuming Debtor has additionally made 194 monthly Class 5A payments of $7,792.00 each for a then total of payments under Class 5A of $1,511,648.00, the total payments on the 1111(b) Total will have been $3,150,948.00 at 194 months (i.e. $1,639,300.00 plus $1,511,648.00). Debtor shall continue to make monthly payments under Class 5B until the 1111(b) Total reaches the Total Allowed Class 5 Claim (which Crimson Portfolio asserts is $4,253,936.64) inclusive of payments under Class 5A.

**Example:** If the Court values the Old Lindale Property at $1,410,000.00, the monthly payment on the Class 5B Claim of $8,450.00 will result in payment in full of the principal balance of the Secured Class 5B Claim (i.e. $1,410,000.00) with interest in 300 months representing total Class 5B payments (if no pre-payment occurs) of $2,535,000.00 inclusive of principal and interest. Assuming Debtor has additionally made 300 monthly Class 5A payments of $7,792.00 each for a then total of payments under Class 5A of $2,337,600.00, the total payments on the 1111(b) Total will have been $4,872,600.00 at 300 months (i.e. $2,535,000.00 plus $2,337,600.00). The 1111(b) Total will have been satisfied and Debtor will not make any additional Class 5B payments.

The Total Class 5 Claim shall continue to be secured by the Crimson Portfolio Collateral to the same extent (i.e. $4,253,936.64 or such other amount as the Court determines is the Total Allowed Class 5 Claim), validity and priority as existed on the Filing Date. Notwithstanding anything to the contrary herein, in the event Crimson Portfolio elects 1111(b), upon receipt of: (i) the Allowed Secured Class 5B Claim (principal and interest); and (ii) total payments of at least $4,253,936.64 (or such other amount as the Court determines is the Total Allowed Class 5 Claim, inclusive of the principal and interest payments on the Secured Class 5A and Secured Class 5B Claim), Crimson Portfolio shall release its lien upon the Old Lindale Class 5B Collateral and, in such event, take such action as reasonably necessary to evidence such release including, but not limited to, filing a cancellation of the Security Deeds and any attendant UCC financing statement. Debtor shall be authorized to sell the Old Lindale Class 5B Collateral or refinance the Secured Class 5B Claims, and Crimson Portfolio shall release its lien against Old Lindale Class 5B Collateral in exchange for the greater of: (i) the then outstanding principal balance due on the Secured Class 5B Claim; and (ii) the then outstanding balance of the Total Allowed Class 5 Claim after deducting all principal, interest and other payments received by Crimson Portfolio since the Filing Date).

**Example**: For purposes of illustration only, in the event the Old Lindale Property is valued at $1,100,000.00 and Debtor wishes to sell the Old Lindale Class 5B Collateral or refinances the Secured Class 5B Claim at the end of the 189th month following the Effective Date, and assuming Debtor has paid (A) $1,000,000 in principal payments and $472,688.00 in interest payments on the Secured Class 5A Claim since the Filing Date; and (B) $1,065,927.60 in principal payments and $531,122.40 in interest payment on the Secured Class 5B Claim, for total Class 5 Payment of $3,069,738.00, for the release of its lien, Crimson Portfolio would have to receive the greater of the (i) remaining principal balance of the Secured Class 5B

20

Claim of $34,072.40 (i.e. $1,100,000 less $1,065,927.60), or (ii) the remaining total outstanding balance of the 1111(b) Total which equals $1,184,198.64 (i.e. $4,253,936.64 less $3,069,738.00). Accordingly, under such scenario, Debtor would have to pay $1,184,198.64 for the release of Crimson Portfolio's lien upon the Old Lindale Class 5B Collateral. Upon such payment, the 1111(b) Total would be satisfied under Class 5B and Class 5A as payments under both Class 5B and Class 5A count towards the 1111(b) Total, and any payment in excess of the Secured Class 5B Claim would be credited as additional principal payments on the Secured Class 5A Claim to the extent of any outstanding principal balance.

Under Option II, Crimson Portfolio shall not hold a general unsecured Class 5 claim.

Debtor's Option II treatment satisfies the requirements of 1111(b), as Crimson Portfolio will receive the present value of the Crimson's Class 5 Collateral and at least the amount of the Total Allowed Class 5 Claim.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

4.6   **Class 6**:      Equinox Secured Claim of Ally Financial:

Class 6 consists of the Secured Claim of Ally Financial, Inc. ("Ally") relating to the Equinox. On January 22, 2014, Ally filed proof of claim number 1 in the amount of $26,442.60 (such amount plus interest accruing pursuant to this paragraph is referred to herein as the "Secured Class 6 Claim") secured by a first priority security interest and lien upon Debtor's 2013 Chevrolet Equinox ("Equinox"). Debtor shall pay the Secured Class 6 Claim in 60 equal monthly payments of $489.96 commencing on the Effective Date and continuing by the 25th day of each subsequent month with interest accruing at the annual rate of 4.25% from the Effective Date. Ally's security interest in Debtor's Equinox shall continue and attach to the Equinox to the same extent, validity and priority as existed on the Filing Date. Upon payment of the Secured Class 6 Claim, Ally shall release its lien and security interest upon Debtor's Equinox. Any payment received by Ally on its Class 6 Claim subsequent to the Filing Date but prior to the Effective Date, shall be applied to reduce the principal balance of its Secured Class 6 Claim.

The Claim of the Class 6 Creditor is Impaired by the Plan and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

4.7   **Class 7**:      Sierra Secured Claim of Ally Financial:

Class 7 consists of the Secured Claim of Ally Financial, Inc. ("Ally") relating to the Sierra. On January 22, 2014, Ally filed proof of claim number 2 in the amount of $30,846.20 (such amount plus interest accruing pursuant to this paragraph is referred to herein as the "Secured Class 7 Claim") secured by a first priority security interest and lien upon Debtor's 2012 GMC Sierra ("Sierra"). Debtor shall pay the Secured Class 7 Claim in 60 equal monthly payments of $571.56 commencing on the Effective Date and continuing by the 25th day of each subsequent month with interest accruing at the annual rate of 4.25% from the Effective Date. Ally's security

interest in Debtor's Sierra shall continue and attach to the Sierra to the same extent, validity and priority as existed on the Filing Date.  Upon payment of the Secured Class 7 Claim, Ally shall release its lien and security interest upon Debtor's Sierra. Any payment received by Ally on its Class 7 Claim subsequent to the Filing Date but prior to the Effective Date, shall be applied to reduce the principal balance of its Secured Class 7 Claim.

The Claim of the Class 7 Creditor is Impaired by the Plan and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim.  Debtor reserves the right to object to any and all claims.

4.8   **Class 8**:   Secured Claim of World Omni Financial Corp:

Class 8 consists of the Secured Claim of World Omni Financial Corp. ("World Omni"). On January 24, 2014, World Omni filed proof of claim number 3 in the amount of $6,574.55 (such amount plus interest accruing pursuant to this paragraph is referred to herein as the "Secured Class 8 Claim") secured by a first priority security interest and lien upon Debtor's 2010 Toyota Rav4 ("Rav4").   Debtor shall pay the Secured Class 8 Claim in 36 equal monthly payments of $194.84 commencing on the Effective Date and continuing by the 25th day of each subsequent month with interest accruing at the annual rate of 4.25% from the Effective Date. World Omni's security interest in Debtor's Rav4 shall continue and attach to the Rav4 to the same extent, validity and priority as existed on the Filing Date.  Upon payment of the Secured Class 8 Claim, World Omni shall release its lien and security interest upon Debtor's Rav 4. Any payment received by World Omni on its Class 8 Claim subsequent to the Filing Date but prior to the Effective Date, shall be applied to reduce the principal balance of its Secured Class 8 Claim.

The Claim of the Class 8 Creditor is Impaired by the Plan and the holder of the Class 8 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim.  Debtor reserves the right to object to any and all claims.

4.9   **Class 9**:   Claims Secured by Non-Debtor Property:

Class 9 consists of claims on which Debtor is obligated as guarantor, but which are unsecured as to Debtor and are secured by third-party non-debtor property and which are paid by third parties.   Debtor anticipates that such third parties will continue to pay the Class 9 Claims.  Any payments received by a Holder of a Class 9 Claim during the pendency of this case or thereafter, shall be applied in accordance with the non-default provisions and terms of the attendant obligation so long as the obligation is not in monetary default; and the Debtor's insolvency or filing of this Bankruptcy shall not be deemed a default.  In the event the Holder of a Class 9 Claim calls a default due to the Third-Party Obligors' failure to perform, such Holder shall participate as a Class 10 General Unsecured Claim Holder after liquidation of the underlying collateral securing the claim in a commercially reasonable manner and in accordance with any applicable laws.  Debtor anticipates the following Class 9 Claims:

| Holder | Third-Party Obligor | Estimated Claim | Collateral |
|--------|--------------------|-----------------|-----------|
| SunTrust | Reese-Schlitz, Inc. | $479,704.18 | 702 Shorter Avenue, Rome, GA, 281 Dodd Boulevard, Rome, GA, 1806 Parish, Drive, Rome, GA |
| Keystone Equipment Finance | Reese-Schlitz, Inc. | $27,293.65 | Reese-Schlitz Vehicles |

The Holder of any Class 9 Claim is impaired and entitled to vote to accept or reject the Plan.  Nothing contained herein shall prohibit the Debtor from objecting to the Class 9 Claims for any reason.

4.10    **Class 10:**      General Unsecured Claims:

Class 10 consists of general unsecured claims, including deficiencies on secured claims, if any, not otherwise classified herein.

In the event Crimson Portfolio elects treatment under Class 5 Option I, Allowed Class 10 Claims shall share pro-rata in $122,346 paid in 120 monthly payments of $1,019.55 commencing on the 25th day of the 19th month following the Effective Date and continuing by the 25th day of each subsequent month for a total of 120 months.

In the event Crimson Portfolio elects treatment under Class 5 Option I, Debtor anticipates payment to unsecured creditors based upon the following Holders of Class 10 Claims and following distributions:

| Holder | Estimated Claim | Monthly Share | Total Share |
|--------|-----------------|---------------|-------------|
| Crimson Portfolio Class 5 Deficiency | $2,153,936.64 | $1,005.94 | $120,713.26 |
| Aadvantage Mastercard | $804.00 | $0.38 | $45.06 |
| American Express | $10,047.80 | $4.69 | $563.11 |
| Darlington School | $12,475.43 | $5.83 | $699.16 |
| Floyd Primary Care | $11.44 | $0.01 | $0.64 |
| GM MasterCard | $2,891.00 | $1.35 | $162.02 |
| Lavonne Fore DMD | $1,453.00 | $0.68 | $81.43 |
| Sears Mastercard | $1,451.00 | $0.68 | $81.32 |
| Totals | $2,183,070.31 | $1,019.55 | $122,346.00 |

In the event Crimson Portfolio elects treatment under Class 5 Option II, Allowed Class 10 Claims shall share in monthly payments of $1,019.55 commencing on the 25th day of the 19th month following the Effective Date and continuing by the 25th day of each subsequent month until the earlier of:  (i) all such Class 10 Claim are paid in full with 3.25% annual interest; and (ii) 31 months.

In the event Crimson Portfolio elects treatment under Class 5 Option II, Debtor anticipates payment to unsecured creditors based upon the following Holders of Class 10 Claims and following distributions:

| Holder | Estimated Claim | Monthly Payments | Total Share |
|---|---|---|---|
| Aadvantage Mastercard | $804.00 | $28.14 | $872.23 |
| American Express | $10,047.80 | $351.63 | $10,900.49 |
| Darlington School | $12,475.43 | $436.59 | $13,534.14 |
| Floyd Primary Care | $11.44 | $0.40 | $12.41 |
| GM MasterCard | $2,891.00 | $101.17 | $3,136.34 |
| Lavonne Fore DMD | $1,453.00 | $50.85 | $1,576.31 |
| Sears Mastercard | $1,451.00 | $50.78 | $1,574.14 |
| Totals | $29,133.67 | $1,019.55 | $31,606.05 |

4.11   **Class 11**:   Priority or Secured Tax Claims of Governmental Units Not Otherwise Classified

Class 11 shall consist of any Priority or Secured Claim of a governmental unit entitled to priority under 11 U.S.C. §507(a)(8), which are not otherwise specifically classified in the Plan ("Class 11 Governmental Unit Claim").  The amount of any claim of a Governmental Unit that is not assessed or assessable on or prior to the Effective Date, and the right of the particular governmental unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the particular governmental unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code if applicable.  Debtor reserves the right to pay any Class 11 Governmental Unit claim in full at any time.

Debtor shows that the Internal Revenue Service filed amended proof of claim number 4 asserting an unsecured priority tax claim in the amount of $57.75 based on estimated priority liabilities for year 2013 income taxes.  Debtor's 2013 income tax return is not yet due and Debtor will timely file same.  However, Debtor believes no amounts are owed or will be owed to the IRS, and in the event the IRS does not amend its claim, Debtor intends to object to same.  However, in the event the IRS holds an Allowed Priority Tax Claim, it shall be paid in accordance with Class 11.

Debtor is not aware of any Class 11 Governmental Unit Claim.  In the event Debtor is liable for an Allowed Class 11 Governmental Unit Claim, Debtor shall pay the Holder of such Class 11 Tax Claim equal monthly payments commencing on the Effective Date with interest accruing at the annual rate of 4% per annum or such higher rate as required by the Bankruptcy Code or such lesser rate agreed to by the particular governmental unit so that 100% of such Class 11 Governmental Unit Claim shall be paid in full by the 60th month following the Petition Date.

A failure by Debtor to make a payment under Class 11 to a governmental unit pursuant to the terms of the Plan shall be an event of default.  If Debtor fails to cure an event of default as to governmental unit payments under Class 11 within twenty (20) days notice of default by the particular governmental unit to Debtor and Debtor's counsel, then the governmental unit may (a)

enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of an Allowed Class 11 Governmental Unit Claim is impaired and entitled to vote to accept or reject the Plan.  Nothing contained herein shall prohibit Debtor from objecting to the Class 11 Claims for any reason.

4.12    **Class 12**:    Debtor's Interest and New Value:

Debtor shall retain all of his assets free and clear of any claims, liens or encumbrances except as specifically set forth in the Plan.  In the event the Class 9 and 10 Creditors do not vote to accept the Plan as a class, and the Court determines the "absolute priority rule[8]" is applicable in this Bankruptcy Case, Debtor proposes the following "new value."  Debtor shall contribute $25,000.00 of non-bankruptcy estate property, or such other amount as the Court shall deem necessary and appropriate, as new value.  New value is the vehicle through which current equity holders purchase the equity interest of the reorganized debtor; or in the case of an individual debtor, the individual purchases his retained assets back from the Bankruptcy Estate. Efforts of the debtor to purchase assets may be subject to competing bids in the market place under certain circumstances.  Specifically if Class 9 and 10 of unsecured claims do not vote to accept the Plan as a class as set forth in this provision, then, in that event third parties may be able to purchase the Retained Assets of the Debtor, subject to the Debtor's exemptions, by appearing at the confirmation hearing and submitting a higher bid for the assets subject to the terms of this Plan. The requirement for, sufficiency and validity of any such bid shall be subject to the approval and review of the Court at the Confirmation Hearing.  Any New Value contributed by Debtor or on Debtor's behalf will be distributed in accordance with the priorities set forth in the Bankruptcy Code.

**Article 5**
**Treatment of Unclassified Claims**

5.1    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan.  All such Claims are instead treated separately in accordance with this Article 5 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in which it holds a security interest, which such security interest shall survive following the Effective Date to the same extent validity and priority as existed on the Filing Date. Debtor shall pay the Firm the outstanding fees on the Effective Date, unless otherwise agreed by Law Firm.  Debtor is paying post-petition bills and does not expect any claims for unpaid

---

[8] Debtor shows that the absolute priority rule is not applicable to individual chapter 11 cases.  However, as a split of authority exists on this matter, to the extent the absolute priority rule is deemed applicable, Debtor provides this provision.  Debtor does not waive the right to show that the absolute priority rule is not applicable to individual chapter 11 cases following the 2005 amendments to the Bankruptcy Code including 11 U.S.C. §1115.

post-petition goods and services other than professional fees.  Debtor will incur quarterly trustee fees which Debtor shall pay when due until such time as a final order is entered closing the Case.

       5.2   Administrative Expense Claims.

       5.2.1   Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

       5.2.2   Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from post-petition operations by Debtor in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the entry of the Confirmation Order.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

       5.2.3   Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within the time set by the Bankruptcy Court.

       Debtor's attorney fees during the pendency of the case shall be paid as the same may be approved by the Bankruptcy Court.  Debtor may pay professional fees incurred after confirmation of this Plan without Court approval.  Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

**Article 6**
**Means for the Implementation of the Plan**

       6.1   <u>Parties Responsible for Implementation of the Plan</u>  Upon  confirmation,  Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.

26

6.2    Sources of Cash for Distribution.

Debtor shall pay all claims from Debtor's post-petition income from the operation of Debtor's real property and income from his business interests as well as contributions from his wife. Additionally, Reese-Schlitz, Inc. pays the operating costs of Debtor's Old Lindale Property and Huffaker Property, including taxes, insurance and maintenance. Debtor shows that he will pay administrative expense claims from the "new value" included in Class 12 of the Plan or from some other source if Class 12 is not applicable.

The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

6.3    Preservation of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action. The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserve all causes of actions for breach of any former or now existing agreement or otherwise.

6.4    Effectuating Documents, Further Transactions. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5    Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to section 1146(a) of the Bankruptcy Code, OCGA §48-6-65(a)(2) and Ga. Comp. R. & Regs. R. 560-11-8.14, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6     Further Authorization.  Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7     Liabilities of the Debtor.  Debtor will not have any liabilities except those expressly assumed under the Plan.  Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

**Article 7**
**Distributions**

7.1     Disbursing Agent.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Debtor or its agent.

7.2     Distributions of Cash.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3     No Interest on Claims or Interests.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.

7.4     Delivery of Distributions.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made in Cash shall be retained by Debtor until such Distributions are claimed.  All Cash Distributions returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

7.5     Distributions to Holders as of the Record Date.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6     <u>Fractional Dollars</u>.  Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7     <u>Withholding Taxes</u>.  Debtor or Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

8.1     <u>Objections to Claims</u>.  Debtor shall be entitled to object to Claims, <u>provided</u>, <u>however</u>, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

8.2     <u>No Distributions Pending Allowance</u>.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3.    <u>Resolution of Claims Objections</u>.  On and after the entry of the Confirmation Order, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 9
## Provision for Assumption of Unexpired Leases and Executory Contracts

9.1 Debtor is a party to lease for a house located on Debtor's Huffaker Property.  On the Effective Date, unless otherwise contained in a motion to assume or reject the Huffaker Lease, Debtor shall assume the Huffaker Lease.

Any unexpired leases or executory contracts which are not assumed pursuant to this Plan or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after entry of the Confirmation Order.  Any claims which are not timely filed will be disallowed and discharged.

## Article 10
## Effect of Plan on Claims and Interests

10.1    <u>Vesting of Debtor's Assets</u>.  Except as otherwise explicitly provided in the Plan, upon entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor, free and clear of all Claims, Liens, charges,

encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the earlier of the entry of a Final Decree or the Effective Date, Debtor may operate his businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

      10.2.  <u>Discharge of the Debtor</u>. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date. However, pursuant to section 1141(d)(5) of the Bankruptcy Code, except in limited circumstances, a discharge is not available to an individual debtor unless and until all payments have been made under the plan. Therefore, Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code. Debtor is not waiving his right to seek entry of a discharge order before completion of all plan payments. In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge. The fee associated with the attendant motion to reopen Debtor's case shall be waived and Debtor shall not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia.

      10.3  <u>Injunction</u>. Regardless of whether the Court has entered a final decree in the Bankruptcy Case, so long as Debtor is in compliance with the Plan or the Court has entered an order granting Debtor a discharge under section 1141(d)(5) of the Bankruptcy Code, the Plan provides for a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action provided for under the Plan, except as provided for in the Plan, to the fullest extent authorized or provided by the Bankruptcy Code.

      10.4  <u>Setoffs</u>. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder of a Claim.

      10.5  <u>Exculpation and Limitation of Liability</u>. Except as expressly provided by the Plan, Debtor and any of Debtor's current and/or post-Filing Date and pre-Effective Date employees, advisors, attorneys, representatives, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Except as expressly provided by

the Plan, no  Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

    10.6    <u>Effect of Confirmation</u>.

    10.6.1  <u>Binding Effect</u>. On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

    10.6.2  <u>Effect of Confirmation on Automatic Stay</u>. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay provided in § 362(a) of the Bankruptcy Code shall terminate.

    10.6.3  <u>Filing of Reports</u>. Reorganized Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

    10.6.4  <u>Post-Confirmation Retention of Professionals</u>. After entry of the Confirmation Order, any requirement that professionals  comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in the ordinary course of business.

**Article 11**
**<u>Conditions Precedent</u>**

    11.1    <u>Conditions to Confirmation</u>.   The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Article 11.3 of this Plan.

    11.1.1  The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Debtor in their sole and absolute discretion; and

    11.1.2  The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Cases.

    11.2    <u>Conditions to the Effective Date</u>.   The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

    11.2.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan (including documents relating to the Exit Financing) shall be in form and substance that is acceptable to Debtor in their reasonable discretion;

11.2.3 Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3    Waiver of Conditions to Confirmation or Consummation.  The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 12**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

12.1    Retention of Jurisdiction.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1 To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2 To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3 To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

12.1.4 To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

12.1.5 To hear and rule upon all applications for Professional Compensation;

12.1.6 To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7 To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8 To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9 To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10 To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11 To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

12.1.12 To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13  To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of their assets during the Bankruptcy Case; and

12.1.15 To enter a final decree.

12.2   Alternative Jurisdiction.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3   Final Decree.  The Bankruptcy Court may, upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.  In such event, the Bankruptcy Court may enter an Order closing this cases pursuant to section 350 of the Bankruptcy Code, provided, however, that:  (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes:  (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; (4) entering a discharge order; or (5) for other cause.  Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen Debtor's case shall be waived, and Debtor shall not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia.

**Article 13**
**Miscellaneous Provisions**

13.1    <u>Modification of the Plan</u>.  Debtor shall be allowed to modify this Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtor may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2    <u>Allocation of Plan Distributions Between Principal and Interest</u>.  Except as expressly provided by the Plan to the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3    <u>Applicable Law</u>.    Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4    <u>Preparation of Estate Returns and Resolution of Tax Claims</u>.  Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5    <u>Headings</u>.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6    <u>Revocation of Plan</u>.  Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7    <u>No Admissions; Objection to Claims</u>.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8   <u>No Bar to Suits</u>.  Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim.  Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

13.9   <u>Conflicts</u>.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**Article 14**
**Tax Consequences**

Tax consequences resulting from confirmation of this Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax conse-quences, no specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  The proponent assumes no responsibility for the tax effect that consummation of this Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this 25th day of April, 2014.

/s/ Stephen Brewster
Stephen Brewster, Sr.
Debtor and Debtor in Possession

**JONES & WALDEN, LLC**

/s/ Leslie M. Pineyro
Leslie M. Pineyro
Georgia Bar No. 969800
21 Eighth Street, NE
Atlanta, Georgia  30309
(404) 564-9300
Attorney for Debtor and Debtor in Possession

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing document via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below and the attached mailing matrix:

Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Spring Street, SW
Atlanta, GA  30303

This 25th day of April, 2014

**JONES & WALDEN, LLC**

_/s/ Leslie M. Pineyro_
Leslie M. Pineyro
Georgia Bar No. 969800
Leon S. Jones
Georgia Bar No. 003980
21 Eighth Street, NE
Atlanta, Georgia  30309
(404) 564-9300
Attorneys for Debtor and Debtor in Possession